# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff**

**-vs-**                                                                **Case No. 2:05-cr-67-FtM-29DNF**

**TILMAN EUGENE CARTER,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO SUPPRESS IDENTIFICATION (Doc. No. 33)** |
| **FILED:** | **October 21, 2005** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

The Defendant, Tilman Carter is requesting that the identification procedure conducted in this case and any resulting in-court identification be suppressed. The Defendant claims that he was identified by the use of a single photograph which was shown to an undercover officer. The Government filed a Response (Doc. 37) on November 7, 2005. An evidentiary hearing was held on December 7, 2005, and the Defendant submitted a Supplemental Memorandum (Doc. 60).

The Defendant is charged in a four Count Superceding Indictment. In Counts One, Two, and Four, the Defendant is charged with possessing with intent to distribute five (5) grams or more of a mixture containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§841(a)(1) and

841(b)(1)(B)(iii). In Count Three, the Defendant is charged with possessing with intent to distribute fifty (50) grams or more of a detectable amount of cocaine base in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(A)(iii).

**Testimony and Evidence**[1]

The Government presented the testimony of Christina Noel Umberger, a detective with the Lee County Sheriff's Office. (Tr.[2] p. 15). Detective Umberger was working in the narcotics vice unit in January 2005.(Tr. p. 16). She testified that she has participated in approximately 100 undercover buys. (Tr. p. 16). On January 14, 2005, Detective Caruso asked Detective Umberger to participate in a controlled buy of narcotics with a confidential informant and an alleged narcotics dealer known only as "Tim." (Tr. p. 16-17). She had no knowledge of "Tim" and was not aware that he was a suspect in an investigation. (Tr. p. 27). The confidential informant was on the telephone with the Defendant, and Detective Umberger took the phone and set up a meeting at a gas station with a convenience store at night. (Tr. p. 17, 30-1). They went to the gas station and the Defendant arrived in a white pickup truck. (Tr. p. 17). The parking lot was well-lit. (Tr. p. 30). When they parked, the Defendant approached the vehicle, and spoke with Detective Umberger for approximately 4 to 5 minutes, and the Defendant was no more than 12 inches away from her. (Tr. p. 17). The Defendant handed Detective Umberger crack cocaine, and she gave the Defendant prerecorded U.S. currency. (Tr. p. 18).

---

[1] The Government proffered that it was not planning on calling the confidential informant as a witness, and therefore, there would be no identification by the confidential informant of the Defendant through the use of the photograph. (Tr. p. 8) The Government also expects the officers to identify the Defendant by their exposure to the Defendant and not by the use of the photograph. (Tr. p. 9)

[2] "Tr" refers to the transcript (Doc. 61) of the evidentiary hearing held on December 7, 2005.

After the transaction occurred, Detective Umberger was shown a single photograph, and she stated that the photograph was of the Defendant. (Tr. p. 24-25). When Detective Umberger participates in an undercover drug transaction she pays very close attention to suspects' features and faces so that she can positively identify them later. (Tr. p. 28). She gave a description of the Defendant including his height, weight, his gold teeth and his clothing to Detective Caruso. (Tr. p. 31-2). Between January 14, 2005, and the next narcotics transaction, Detective Umberger spoke with the Defendant numerous times and was very familiar with his voice. (Tr. p. 18, 19).

On January 18, 2005, Detective Umberger called the Defendant and asked to purchase 2 crack cocaine cookies for $1000. (Tr. p. 19). The Defendant agreed, and they met at a parking lot of a hotel at night. (Tr. p. 19, 44). When she arrived at the parking lot, she called the Defendant and he came to the parking lot. (Tr. p. 19). He came to her car window, and they had a conversation. (Tr. p. 19-20). Detective Umberger estimated that their meeting lasted approximately 3 to 5 minutes. (Tr. p. 19-20, 40-41). The Defendant handed Detective Umberger 2 cookies of crack cocaine, and Detective Umberger handed him money.(Tr. p. 20). Detective Umberger estimated that the transaction lasted approximately 3 to 6 minutes. (Tr. p. 20). She initialed a photograph of the Defendant as the person who was involved in the drug transaction. (Tr. p. 24-25). Counsel for the Defendant presented the tape recorded transaction, and the conversation between Detective Umberger and the Defendant lasted approximately 1 minute. (Tr. p. 39-40). Detective Umberger spoke with the Defendant numerous times between January 19, 2005, and the next transaction on January 27, 2005. (Tr. p. 20).

On January 27, 2005, Detective Umberger called the Defendant on his cell phone to arrange for the purchase of 5 cookies of crack cocaine. (Tr. p. 20). They met at a liquor store at night. (Tr. p. 21). The Defendant entered her vehicle and had a popcorn box with 5 cookies of crack cocaine.

(Tr. p. 21). They had a lengthy conversation as to why the Defendant was late for the meeting. (Tr. p. 21). He told her that he was cooking the crack cocaine at his sister's house, and when the sister arrived home, they had a fight, so he had to take the crack cocaine to a different location to cook it. (Tr. p. 21). The Defendant gave Detective Umberger the 5 cookies of crack cocaine, and she gave him money for them. (Tr. p. 21). The transaction lasted approximately 7 to 10 minutes. (Tr. p. 22). Detective Umberger was shown a photograph of the Defendant and she initialed it as being the person who was involved in the drug transaction. (Tr. p. 24-25).

On July 27, 2005, Detective Umberger called the Defendant on his cell phone and arranged to meet him at Galaxy Lanes for another narcotics deal. (Tr. p. 23). As she entered the parking lot she was on the phone with the Defendant. (Tr. p. 24). He told her that he was in a silver Cadillac which she spotted in the parking lot. (Tr. p. 24). She saw the Defendant and identified him and could identify his voice on the phone. (Tr. p. 24). The Defendant was then arrested. Detective Umberger testified that she identified the Defendant based upon her personal knowledge of meeting him for the illegal drug transactions, and not by a photograph that was presented to her. At the evidentiary hearing, Detective Umberger identified the Defendant by her personal knowledge as the person who was involved in the three illegal drug transactions with her. (Tr. p. 25-26).

Detective William Tulko of the Fort Myers Police Department testified that he participated in the drug transaction that occurred on January 14, 2005, as surveillance and backup. (Tr. p. 47, 48). He watched the Defendant approach Detective Umberger's vehicle and engage in a transaction with her. (Tr. p. 50). He was located approximately the width of the courtroom away from the transaction. (Tr. p. 48). He continued to watch the Defendant, made a mental note of the Defendant's clothing, and saw him enter the convenience store. (Tr. p. 50, 56). Detective Tulko gave a description of the

Defendant including his height, weight and clothing to dispatch. (Tr. p. 56). When the Defendant exited the convenience store, the Defendant stood directly in front of Detective Tulko's vehicle for a few minutes, so Detective Tulko had a good view of the Defendant's features. (Tr. p. 50). Detective Tulko was shown a photograph of the Defendant after the transaction, and was asked if he could identify him, which he could. (Tr. p. 51).

**Analysis**

The Defendant argues that showing a single photograph for identification was unduly suggestive. Further, the Defendant asserts that any in-court identification which is the product of the out-of-court identification procedure using a single photograph is also unduly suggestive. To determine if an out-of-court identification is admissible, courts employ a two-step analysis. *U.S. v. Diaz*, 248 F.3d 1065, 1102 (11th Cir. 2001). First the court must determine whether the original identification procedure was "unduly suggestive." *Id*. If the court determines that the original identification was unduly suggestive, then the court must consider the totality of the circumstances, and whether the identification was reliable based upon the circumstances presented. *Id*., citing *Neil v. Biggers*, 409 U.S. 188, 199 (1972), and *Dobbs v. Kemp*, 790 F.2d 1499, 1506 (11th Cir. 1986). To determine if the identification was reliable, the court will consider the following: "(1) opportunity to view; (2) degree of attention; (3) accuracy of the description; (4) level of certainty; and (5) length of time between the crime and the identification." *U.S. v. Diaz*, 248 F.3d at 1102, citing *Neil v. Biggers*, 409 U.S. at 199. Although not dispositive of the issue of suggestiveness, showing only one photograph can be determined to be unduly suggestive in certain circumstances. *See, Marsden v.*

*Moore*, 847 F.2d 1536, 1545-46 (11th Cir. 1988), and *United States v. Cueto*, 611 F.2d 1056, 1063 (5th Cir. 1980).

Detective Umberger participated in three hand-to-hand drug transactions with the Defendant. She was able to identify the Defendant by sight on the date of his arrest. She did not use the photograph to identify the person from whom she bought the illegal crack cocaine, but rather used her own personal knowledge of the Defendant from the face-to-face meetings with him. Although the Court agrees with the Defendant, that in some circumstances showing a single photograph is unduly suggestive, in the instant case, Detective Umberger had multiple meetings with the Defendant and could identify him by sight, and could also identify his voice from numerous telephone calls. Detective Tulko observed the first drug transaction, and watched the Defendant after he exited the convenience store. He also could identify the Defendant from his personal knowledge. The Court finds that there was no true identification by either Detectives Umberger or Tulko of the Defendant by the use of the single photograph. The photograph was not used in the arrest of the Defendant. Based upon the evidence presented, the Court determines that the photographic identification was not unduly suggestive, and the Motion to Suppress (Doc. 33) should be denied.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this __16th__ day of December, 2005.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:

All Parties of Record